UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-1574-GW(SPx) | Date | August 2, 2018 |
|---|---|---|---|
| Title | *Raul Gonzalez, et al. v. City of El Monte, et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | Katie Thibodeaux | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | |
| Cameron Sehat | Kyle R. Bevan | |

**PROCEEDINGS:** DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) [12]

Court hears oral argument. The Tentative circulated and attached hereto, is adopted as the Court's Final Ruling. The Court would GRANT the Motion and dismiss the first and fourth causes of action. The Court would permit leave to amend pursuant to Rule 15(a)(2). Plaintiffs shall have until August 13, 2018 to file an amended complaint.

| | : | 05 |
|---|---|---|
| | Initials of Preparer | JG |

*Gonzalez v. City of El Monte, et al.*; Case No. 2:18-cv-01574-GW-(JCx)
Tentative Ruling on Motion to Dismiss

**I. Background**

Raul Menjivar ("Menjivar") and Jose Gonzalez ("Gonzalez"), collectively "Plaintiffs," bring this action against the City of El Monte (the "City"), Detective Brian Glick ("Glick"), and Does 1-10, collectively "Defendants," alleging: (1) false arrest and imprisonment pursuant to 42 U.S.C. § 1983, (2) excessive force pursuant to 42 U.S.C. § 1983, (3) a state law claim of battery, and (4) *Monell* liability for the City's custom, policy, and practice. *See generally* Complaint ("Compl."), Docket No. 1. Plaintiff Gonzalez alone brings the second and third causes of action. *Id.* ¶¶ 41-52.

The Complaint alleges the following:

On or about May 4, 2017, Gonzalez responded to an advertisement on "Craig's List" for the sale of a 1968 El Camino (the "Vehicle"), placed by Josh Dean Perkins ("Perkins"). *See id.* ¶ 14. Before Gonzalez purchased the Vehicle, he requested to view the Vehicle's pink slip to verify that Perkins was its owner. *Id.* ¶ 15. Gonzalez is a custom car collector and "restorator," and planned to resell the Vehicle after making some customizations. *Id.* ¶¶ 16, 18. After purchasing the Vehicle from Perkins, Gonzalez drove the Vehicle to a hangar at the El Monte Airport where he maintained and worked on classic cars. *Id.* ¶ 16. Gonzalez made some light customizations to the Vehicle, cleaned it up, and then placed it on Craig's List for resale. *Id.* ¶ 18. In or about June 2017, Gonzalez decided to sell the Vehicle to Menjivar, Gonzalez's friend. *Id.* ¶ 19. Menjivar offered Gonzalez a Toyota Corolla along with $2,000 payment for the Vehicle. *Id.* Gonzalez accepted, and signed the pink slip over to Menjivar to transfer ownership. *Id.*

Unbeknownst to Gonzalez, Perkins had "sold" the same Vehicle to another man named "Steven." *Id.* ¶ 20. When Steven had arrived to pick up the Vehicle from Perkins, Perkins falsely claimed that the "delivery guys" – referring to Gonzalez and at least one other person – stole the Vehicle. *Id.* ¶ 21. Perkins then filed a false police report in order to perpetuate the fraud. *Id.* Defendant Glick, an officer of the City's police force, set up a sting operation to effectuate Gonzalez's arrest and directed Steven to contact Gonzalez under the guise of a prospective buyer. *Id.* ¶¶ 22, 35. On June 22, 2017, Steven called Gonzalez and offered to buy the Vehicle. *Id.* ¶ 20. Since Steven offered more for the Vehicle than Menjivar, and Gonzalez

1

and Menjivar decided together to sell the car to Steven. *Id.* ¶ 23.

After Gonzalez coordinated the resale of the Vehicle with Steven, Glick arrived at Gonzalez's hangar and arrested Plaintiffs for possession of a stolen vehicle, Grand Theft Auto, and running a "chop shop." *Id.* ¶ 24. Gonzalez alleges that although he was compliant and non-threatening during his arrest, Glick applied and over-tightened a pair of handcuffs and ignored his complaints of pain. *Id.* ¶¶ 42-43. Gonzalez suffered severe pain due to the handcuffs cutting off his circulation. *Id.* ¶ 43.

In an attempt to exonerate themselves and avoid arrest, Plaintiffs showed Glick the Vehicle's pink slip, which documented the transfer of the Vehicle from Perkins to Plaintiffs, and the original key to the Vehicle. *Id.* ¶ 25. Steven reported to Glick that Perkins claimed to have mailed Steven the pink slip, so its appearance in Plaintiffs' possession, Plaintiffs allege, should have alerted Glick that either Steven or Perkins was being untruthful. *Id.* Gonzalez's wife also showed Glick phone logs between Perkins and Gonzalez prior to the sale date in order to prove that the men had a buyer-seller relationship. *Id.* ¶ 26. Additionally, when Glick checked the VIN serial numbers on the other vehicles in the hangar, they all came back as "clean" or registered to Gonzalez. *Id.* ¶ 27. Nonetheless, Glick refused to release Plaintiffs, stating that although he knew "something did not make sense," he "had to have both Plaintiffs in custody until he found out what was really going on." *Id.* ¶ 28.

Perkins confessed the following day to selling the Vehicle twice and making a false police report, and Plaintiffs were thereafter released. *Id.* ¶ 29. Plaintiffs allege that the City maintained or permitted a policy, practice, and custom of permitting, encouraging, and ratifying Plaintiffs' false arrests. *Id.* ¶ 57.

Plaintiffs filed their Complaint in this Court on February 26, 2018. *See generally id.* Defendants moved to dismiss all claims on April 30, 2018. *See generally* Motion to Dismiss ("MTD"), Docket No. 12. Plaintiffs filed an Opposition to Defendants' MTD on July 5, 2018. *See generally* Opposition to MTD ("MTD Opp."), Docket No. 14. Defendants then filed their reply on July 9, 2018. *See generally* Reply to Plaintiffs' Opposition ("Reply"), Docket No. 15.

## II. Legal Standard

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint may be dismissed for failure to state a claim for one of two reasons: (1) lack of a cognizable legal theory or (2) insufficient

facts under a cognizable legal theory.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim has facial plausibility when the plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged, and not merely that there is a "sheer possibility" that the defendant has acted unlawfully.  *Id.*  The Ninth Circuit has made clear that the pleading standard set forth in *Iqbal* applies to § 1983 claims.  *See AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012); *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In deciding a 12(b)(6) motion, the court must construe the complaint in the light most favorable to the plaintiff, accept all allegations of material fact as true, and draw all reasonable inferences from well-pleaded factual allegations.  *Gompper v. VISX, Inc.*, 298 F.3d 893, 896 (9th Cir. 2002); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001); *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).  The court is not required to accept legal conclusions couched as factual allegations as true.  *Iqbal*, 556 U.S. at 679.  Where a plaintiff facing a 12(b)(6) motion has pleaded "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," the motion should be denied.  *Id.*; *Sylvia Landfield Trust v. City of Los Angeles*, 729 F.3d 1189, 1191 (9th Cir. 2013).  A dismissal for failure to state a claim is appropriate only where it appears, beyond doubt, that the plaintiff can prove no set of facts that would entitle it to relief.  *Johnson v. Knowles*, 113 F.3d 114, 117 (9th Cir. 1997).

**III.  Discussion**

    A.  <u>First Cause of Action – False Arrest and Imprisonment</u>

Defendant Glick argues that the first cause of action should be dismissed for two reasons: first, that the facts alleged establish that he had probable cause to effectuate the arrest; and, in the alternative, that he is entitled to qualified immunity.  The Court considers each in turn.

        *1.  Glick Had Probable Cause to Arrest*

Defendant Glick argues that the first cause of action should be dismissed because Plaintiffs have failed to state a claim upon which relief can be granted.  *See* MTD at 3.  Under § 1983, a person may bring a claim against a government official who acts under color of state law to deprive that person of constitutional rights.  42 U.S.C. § 1983.  Defendants argue that

because the Complaint establishes that Glick had probable cause to arrest Plaintiffs, there is no viable false arrest claim.  *See* MTD at 3; Reply at 1.  Plaintiffs allege that Glick lacked probable cause to arrest because: (1) they showed Glick the Vehicle's pink slip, which indicated that Perkins had transferred the Vehicle to Gonzalez, (2) Gonzalez's wife showed Glick phone calls between Gonzalez and Perkins prior to the sale date, which indicated that the men had a buyer-seller relationship, (3) none of the other vehicles in the hangar were stolen, which indicated that Gonzalez did not run a "chop shop," and, (4) Glick stated that he knew that "something did not make sense," but that he "had to have both Plaintiffs in custody until he found out what was really going on."  *See* Compl. ¶¶ 25-28.

To determine whether an officer had probable cause for an arrest, the court must examine the events leading up the arrest, and then decide "whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to" probable cause.  *Maryland v. Pringle*, 540 U.S. 366, 371 (2003).  Probable cause is a fluid concept and is not a "high bar." *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018).  Also, because the probable cause standard is objective, "probable cause supports an arrest so long as the arresting officers had probable cause to arrest the suspect for any criminal offense, regardless of their stated reason for the arrest."  *Devenpeck v. Alford*, 543 U.S. 146, 153-55 (2004); *see also Scott v. United States*, 436 U.S. 128, 138 (1978) ("Subjective intent alone . . . does not make otherwise lawful conduct illegal or unconstitutional."); *Whren v. United States*, 517 U.S. 806, 812-13 (1996) (reviewing cases that held that an arresting officer's state of mind is irrelevant to the existence of probable cause).

Accepting all factual allegations of the Complaint as true, and viewing those facts in the light most favorable to Plaintiff, the Court would find that those facts establish that Glick did have probable cause to arrest Plaintiffs.  First of all, according to the Complaint, Glick arrested Plaintiffs "upon [his] arrival at the hanger".  *See* Compl. ¶ 24.  By that point, Gonzalez was identified by Perkins as one of the "delivery guys" who stole the Vehicle and, after Glick employed Steven to arrange for the sale of the Vehicle, Plaintiffs were found in possession of the Vehicle in the airport hangar.  *Id.* ¶¶ 21, 24.  Plaintiffs' exculpatory information – here, the pink slip, phone logs, and original car key – was not supplied until *after* the arrest had already been made.  Additionally, when a suspect supplies exculpatory evidence following an arrest, a police officer is not required to accept or to rule out the suspect's innocent explanations for what

4

appears to be criminal conduct, *i.e.* such evidence does not necessarily negate a reasonable police officer's determination of probable cause. *See Wesby*, 138 S. Ct. at 592 (holding that officers are not required to rule out a suspect's innocent explanation of suspicious facts and that innocent explanations do not have an "automatic, probable-cause-vitiating effect"); *see also Broam v. Bogan*, 320 F.3d 1023, 1032 (9th Cir. 2003) ("Once probable cause to arrest someone is established, an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused.") (quoting *Ahlers v. Schebil*, 188 F.3d 365, 371 (6th Cir. 1999)). Even though Glick may have had suspicions that something was amiss after Plaintiffs provided him with additional information, that would not negate the fact that he encountered Plaintiffs in possession of, and attempting to sell, a vehicle that had been reported stolen. Furthermore, as Ninth Circuit precedent makes clear, Glick had "no duty to investigate further or to look for additional evidence which may exculpate the accused" once probable cause to arrest was established. *See Broam*, 320 F.3d at 1032. As such, the Court would find that the motion to dismiss the first cause of action should be granted, as the Complaint alleges facts which on their face establish that Glick had probable cause to initially arrest the Plaintiffs.

    2. *Glick Is Entitled to Qualified Immunity*

In the alternative, Defendant Glick argues that he is entitled to qualified immunity as to the first cause of action, and therefore should be precluded from being sued. *See* MTD at 5. The doctrine of qualified immunity protects government officials "from liability insofar as their conduct does not violate clearly established or constitutional rights of which a reasonable person would have known." *Stanton v. Sims*, 571 U.S. 3, 4-5 (2013) (*per curiam*) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Whether a defendant is entitled to qualified immunity is a two-part inquiry that asks: "(1) Was the law governing the official's conduct clearly established? (2) Under that law, could a reasonable officer have believed the conduct was lawful?" *Mackinney v. Nielsen*, 69 F.3d 1002, 1005 (9th Cir. 1995) (quoting *Act Up! Portland v. Bagley*, 988 F.2d 868, 871 (9th Cir. 1993)). In *Anderson v. Creighton*, the Supreme Court instructed courts to examine whether the "contours of the right" in the action were sufficiently clear so that a reasonable official would understand that he or she was violating the right. 483 U.S. 635, 640 (1987).

Applying the qualified immunity doctrine in the Fourth Amendment context requires a high degree of specificity as to the officer's conduct in light of the particular circumstances

before him.  *Wesby*, 138 S. Ct. at 590.  The rule must resolve whether the "circumstances with which [the particular officer] was confronted . . . constitute[d] probable cause."  *Mullenix v. Luna*, 136 S. Ct. 305, 309 (2015).  Because probable cause "turns on the assessment of probabilities in particular factual contexts," *Illinois v. Gates*, 462 U.S. 213, 232 (1983), the "clearly established" law must be particularized to the facts of the case.  Therefore, in order to meet the clearly established standard, a party must "identify a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment."  *White v. Pauly*, 137 S. Ct. 548, 552 (2017).  This standard protects "all but the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

In *Wesby*, the Supreme Court ruled that officers who "reasonably but mistakenly concluded that probable cause [wa]s present" were entitled to qualified immunity under § 1983.  138 S. Ct. at 591.  There, officers responded to a complaint about loud music and illegal activities in a vacant house.  *Id.* at 583.  When they arrived at the house, they found that it was nearly barren, in disarray, and "looked like a vacant property."  *Id.*  Partygoers scattered and hid when they saw the uniformed officers.  *Id.*  When questioned by the officers, they claimed that they had been invited by the home's putative renter, "Peaches."  *Id.*  The officers reached Peaches by phone, and, after first asserting to the contrary, she eventually admitted that she did not have "permission to use the house."  *Id.* at 583-84.  The officers then arrested the partygoers for unlawful entry.  *Id.* at 584.  The officers later dropped the charges when they confirmed that Peaches had actually given the partygoers permission to enter the house.  *Id.*  The Supreme Court ruled that the house's conditions and the partygoers' conduct led the officers to make an "entirely reasonable inference" that the partygoers were knowingly taking advantage of a vacant house for their late-night party.  *Id.* at 586.  Therefore, even if the officers lacked probable cause, they were entitled to qualified immunity because given the circumstances, they "reasonably but mistakenly conclude[d] that probable cause [wa]s present," and there was no "body of relevant case law" finding a Fourth Amendment violation under similar circumstances.  *Id.* at 591.

*Wesby* is analogous to the present case.  Like the officers in *Wesby*, who responded to a complaint about a party in a vacant house, Glick responded to a specific complaint, albeit one that later turned out to be false.  Compl. ¶¶ 21, 35.  Glick set up and coordinated an operation to arrest Plaintiffs based on the information Perkins provided and when Glick arrived at the hangar, he found Plaintiffs in possession of the reportedly stolen Vehicle.  *Id.* ¶ 24.  Like the officers in

6

*Wesby*, Glick reasonably concluded that probable cause was present and, like in *Wesby*, the only information that would've negated that probable cause was supplied by Plaintiffs after they were arrested. *See Wesby*, 138 S. Ct. 580. Furthermore, Plaintiffs have not cited any cases which would "clearly establish" that the facts alleged here would not amount to probable cause. Therefore, assuming that Glick did not have probable cause to arrest Plaintiffs, Glick would nonetheless be entitled to qualified immunity as to the first cause of action.

  B.  Second and Third Causes of Action – Excessive Force and Battery

In reply briefing, Defendant Glick concedes that the second and third causes of action − namely the § 1983 action for excessive force and the state battery action − are sufficiently pleaded. *See* Reply at 8 ("While the second and third claims are rather thin, they appear to be sufficiently pleaded to survive a Rule 12(b)(6) motion."). However, Glick argues that he is entitled to dismissal of those two causes of action on the basis of qualified immunity. *See id.*

  In contrast to the first cause of action, several cases have outlined the "contours" of the right against excessive force and battery. An officer must limit the use of force to an amount that is objectively reasonable under the circumstances. *See Graham v. Connor*, 490 U.S. 386, 396-97 (1989); *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 (9th Cir. 2007) (stating force is proper only when there is a need for force); *Winterrowd v. Nelson*, 480 F.3d 1181, 1184 (9th Cir. 2007) (same). The Complaint alleges that Glick applied and over-tightened a set of handcuffs on Gonzalez, even though he was compliant and posed no threat. *See* Compl. ¶ 42. Furthermore, Glick ignored Gonzalez's complaints that the handcuffs were cutting off his circulation and causing him severe pain. *Id.* ¶ 43. Construing these allegations in favor of Gonzalez, a prudent officer would know that over-tightening a pair of handcuffs on a compliant and non-threatening plaintiff is objectively unreasonable. Viewing the factual allegations in the Complaint in the light most favorable to Plaintiffs supports Gonzalez's claim that Glick used excessive force during the arrest, and therefore Glick is not entitled to qualified immunity for the second and third causes of action as they are currently alleged.

  C.  Fourth Cause of Action – *Monell* Liability

Plaintiffs claim that the City bears liability for Defendant Glick's actions because its policies, practices, and/or customs were a cause of Plaintiffs' injuries. *Id.* ¶¶ 53-62. A municipality cannot be held liable solely because it employs a tortfeasor. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) ("A municipality cannot be held liable under § 1983 on a

*respondeat superior* theory."). In order to establish *Monell* liability, a plaintiff must show that a governmental policy or custom, adopted with "deliberate indifference" to its known or obvious consequences, was the moving force that led to the plaintiff's injuries. *Id.*; *see also Bd. of Cnty. Com'rs of Bryan Cnty. v. Brown,* 530 U.S. 383, 407-08 (1997). In order for a municipality to be found liable for a custom or practice, the complaint must allege more than "isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Monell*, 436 U.S. at 691.

In their Complaint, Plaintiffs make only conclusory and formulaic allegations of the City's custom or policy without any factual allegations. *See* Compl. ¶ 57. While the Complaint alleges a single incident where Glick used excessive force, it fails to show that such a custom or practice was of sufficient duration, frequency, and consistency. *See id.* Plaintiffs' allegations that the City permitted or maintained customs that permitted the occurrence of the wrong conduct[1] are too conclusory to survive a motion to dismiss. *See Hernandez*, 666 F.3d at 637 (affirming dismissal of *Monell* liability claim where the complaint only "alleged that Defendants 'maintained or permitted an official policy, custom, or practice of knowingly permitting the occurrence of the types of wrongs' that it elsewhere alleged," but did not "put forth additional facts regarding the specific nature of this alleged 'policy, custom or practice,' other than to state that it related to [the wrong alleged elsewhere]"); *Anthony v. Lockerby*, No. SACV 12-1702-SJO (SH), 2013 WL 1182965, at *11 (C.D. Cal. March 15, 2013) (ruling that Plaintiff's allegation that the county's policy or custom of neglecting to properly "train, supervise, control, correct the abuse of authority, or to discourage the unlawful use of authority" by the defendant officers was conclusory and formulaic). Likewise, Plaintiffs' allegation that the City "sanction[ed], condon[ed], and approv[ed] of a department wide code of silence" is similarly insufficient to support a *Monell* claim. Compl. ¶ 57; *see Eng v. Pac. Clinics*, No. 2:12-cv-10892-SVW-PJW, 2013 WL 12129611, at *4 (C.D. Cal. May 7, 2013) (dismissing Plaintiff's *Monell* claim because

---

[1] Plaintiffs allege that the City "fail[ed] to discipline officers known to have a propensity for dishonesty," "condon[ed] the practice of overzealous investigations without examining obvious exculpatory evidence," and "promot[ed] and/or acquiesce[ed] in the policy of stopping, detaining, questioning, and arresting members of the public without probable cause or reasonable suspicion." *See* Compl.¶ 57. Plaintiffs' allegations regarding *Monell* liability are predicated on Glick's alleged constitutional violation of Plaintiffs' right to be free from false arrest. As described above, the Court would find that Plaintiffs' first cause of action fails to state a claim. However, because the Court would find that the second cause of action alleging unreasonable force does survive Rule 12(b)(6) analysis, the Court will consider the City's *Monell* liability as it relates to that cause of action.

Plaintiff's naked allegation of a department-wide "code of silence" was insufficient standing alone); *Tucker v. City of Santa Monica*, No. CV 12-5367-SVW (MAN), 2012 WL 2970587, at *4 (C.D. Cal. July 20, 2012) (holding that Plaintiff's allegations that municipal defendants knew of misconduct by police officers and jailers and "encouraged a conspiracy of silence" were "too conclusory to support Plaintiff's *Monell* claim").

Plaintiffs cite cases in which a court declined to dismiss a plaintiff's *Monell* liability claim based on identically broad allegations of a county's customs and policies. *See* MTD Opp. at 6-7. These cases, decided outside this judicial district, are factually distinguishable. For instance, in *IDC v. City of Vallejo*, the plaintiffs alleged that the defendant officers repeatedly used excessive force, and that the municipal policy-makers were aware of those incidents. *See* Case No. 2:13-cv-1987-DAD, 2014 WL 2567185, at *6 (E.D. Cal. June 6, 2014). Here, Plaintiffs have specifically alleged but one bad act by Glick, thus offering no specific allegation that the City's policymakers were aware of any conduct that would have given rise to action on the City's part. Because Plaintiffs fail to specifically allege that any City policymaker adopted any policy with deliberate indifference, the Court would dismiss Plaintiffs' fourth cause of action.

## IV. Conclusion

Based on the foregoing discussion, the Court would GRANT the Motion and dismiss the first and fourth causes of action. The Court would permit leave to amend pursuant to Rule 15(a)(2) ("The court should freely give leave when justice so requires."). Plaintiffs shall have until August 13, 2018 to file an amended complaint.